FILED

02/20/2024

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 2, 2024

## IN RE MACEE M.

**Appeal from the Chancery Court for Knox County**
**No. 202463-1      John F. Weaver, Chancellor**

_____

**No. E2023-00985-COA-R3-PT**

_____

The father and stepmother of Macee M. filed a petition to terminate the mother's parental rights on three grounds. The trial court found that one ground had been proven, abandonment for failure to support, and that termination of the mother's parental rights was in Macee's best interest. Based on these findings, the mother's parental rights were terminated. The mother appeals. We affirm the termination of her parental rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and JOHN W. MCCLARTY, J., joined.

Jennifer L. Chadwell, Oak Ridge, Tennessee, for the appellant, Elisa M. W.[1]

Theodore Kern, Knoxville, Tennessee, for the appellees, Shannon and Thomas L.

### OPINION

#### FACTS AND PROCEDURAL HISTORY

Thomas L. ("Father") and Elisa M. W. ("Mother") are the natural parents of Macee M., born in June of 2012. Father and Mother were never married. However, the Circuit Court for Hamilton County, Tennessee entered a parentage order in November of 2015 establishing Father's parentage.

_____

[1] This court has a policy of protecting the identity of children by initializing the last names of the children, parents, close relatives, and pre-adoptive parents and by not providing the child's exact birth date.

On January 30, 2019, Father filed a petition for custody in the Hamilton County Juvenile Court. Soon after, as the trial court explained, "the decline in the Mother's parental status began to accelerate." On September 20, 2019, the juvenile court adjudged the child dependent and neglected and granted legal custody to Father.

Almost two years later, on May 13, 2021, Father and his wife, Shannon L., (collectively "Petitioners") filed a petition for termination of parental rights and adoption against Mother in the Knox County Chancery Court. The petition alleged three grounds for termination of Mother's parental rights: (1) abandonment due to failure to pay support, Tennessee Code Annotated §§ 36-1-113(g)(1) and 36-1-102(1)(A)(i); (2) persistence of conditions which led to removal of the child from Mother's care, Tennessee Code Annotated § 36-1-113(g)(3); and (3) failure to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility for the child, Tennessee Code Annotated § 36-1-113(g)(14).

On June 16, 2021, Mother filed a pro se answer to the petition. The case was tried over four days throughout several months, specifically, on July 26, 2022, September 20, 2022, November 3, 2022, and January 12, 2023. On the first day of trial, Mother, through counsel, filed an amended answer; however, the initial answer and first amended answer did not include the affirmative defense of lack of willfulness to the claim of abandonment for failure to support. Then, on September 13, 2022, Mother filed a motion to amend her answer to include the affirmative defense to the abandonment claim. After hearing arguments on the motion during the second day of trial, the trial court granted the motion and a second amended answer was filed. After two additional days of trial, the court took the matter under advisement.

On June 8, 2023, the trial court issued a written memorandum opinion and judgment and termination of parental rights in which it found that Petitioners had proven by clear and convincing evidence the ground of abandonment for failure to provide support for Macee and that termination of Mother's parental rights was in Macee's best interest. Based on these findings the court granted the petition and terminated Mother's parental rights.

This appeal followed.

**ISSUES**

The sole issue presented by Mother is whether the trial court erred in finding that Petitioners proved the ground of abandonment for failure to support.[2]

For their part, Petitioners raise two issues:

---

[2] Although Mother only raises this one issue, this court has an affirmative duty to also consider whether termination of her parental rights is in Macee's best interest. *See In re Carrington H.*, 483 S.W.3d 507, 525 (Tenn. 2016).

1. Whether the Trial Court erred in failing to terminate the parental rights of [Mother] based on failure to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child.

2. Whether the Trial Court correctly determined that termination of [Mother's] parental rights is in the child's best interest.

## STANDARD OF REVIEW

"Parents have a fundamental constitutional interest in the care and custody of their children under both the United States and Tennessee constitutions." *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002). "[T]his right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)).

"To terminate parental rights, a court must determine that clear and convincing evidence proves not only that statutory grounds exist but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010) (citation omitted). "The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not." *In re Carrington H.*, 483 S.W.3d at 522.

In an appeal, "this [c]ourt is required 'to review thoroughly the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests.'" *In re Connor B.*, 603 S.W.3d 773, 779 (Tenn. Ct. App. 2020) (quoting *In re Carrington H.*, 483 S.W.3d at 525). In doing so, we must "determine whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). Stated another way, we must make our "own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights." *In re Carrington H.*, 483 S.W.3d at 524.

The trial court's findings of fact are reviewed de novo upon the record with a presumption of correctness unless the evidence preponderates against those findings. Tenn.

R. App. P. 13(d). Questions of law, however, are reviewed de novo with no presumption of correctness. *In re Carrington H.*, 483 S.W.3d at 524.

**ANALYSIS**

## I.    ABANDONMENT FOR FAILURE TO SUPPORT

The trial court found that Petitioners had proven one ground for termination of Mother's parental rights, that Mother had abandoned Macee by failing to support her pursuant to Tennessee Code Annotated §36-1-113(g)(1) in that she had made no voluntary payments during the four-month statutory time period.[3] Mother contends this was error.

A parent's rights may be terminated upon a showing of clear and convincing evidence of abandonment. Tenn. Code Ann. § 36-1-113(c)(1), (g)(1). Petitioners contend that Mother abandoned Macee by failing to financially support her under the statutory definition, which reads in pertinent part:

> (1)(A) For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:
>
> > (i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding, pleading, petition, or any amended petition to terminate the parental rights of the parent or parents . . . of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents . . . have failed to support or have failed to make reasonable payments toward the support of the child[.]

Tenn. Code Ann. § 36-1-102(1)(A) (2020). Failure to support is further defined as the failure to provide monetary support or more than token payments for the statutory period, and the ability to make only small payments is not a defense to failure to make any payments. Tenn. Code Ann. § 36-1-102(1)(D).

This court applies the versions of the parental termination statutes in effect on the date the petition was filed. *In re Braxton M.,* 531 S.W.3d 708, 732 (Tenn. Ct. App. 2017) (holding "that the version of the statute in effect at the time of the petition's filing controls this action"). While the statute previously required the party seeking termination to prove that the failure to support was willful, *see In re Mattie L.*, 618 S.W.3d 335, 345–46 (Tenn.

---

[3] The petition was filed on May 13, 2021; therefore, the determinative period for abandonment is from January 13, 2021, through May 12, 2021.

2021), an absence of willfulness is now an affirmative defense that must be established by the parent.[4] The statute in effect when this petition was filed on May 13, 2021, provides in pertinent part:

> (I) For purposes of this subdivision (1), it shall be a defense to abandonment for failure to visit or failure to support that a parent or guardian's failure to visit or support was not willful. The parent or guardian shall bear the burden of proof that the failure to visit or support was not willful. Such defense must be established by a preponderance of evidence. The absence of willfulness is an affirmative defense pursuant to Rule 8.03 of the Tennessee Rules of Civil Procedure.

Tenn. Code Ann. § 36-1-102(1)(I) (2020).

"Failure to support is willful when a parent is aware of the duty to support and has the ability but makes no attempt to provide support and has no justifiable excuse for failure to do so." *In re Mattie L.,* 618 S.W.3d at 345. *See also In re Audrey S.*, 182 S.W.3d 838, 863 (Tenn. Ct. App. 2005).

> Failure to visit or support a child is "willful" when a person is aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so. . . . Failure to visit or to support is not excused by another person's conduct unless the conduct actually prevents the person with the obligation from performing his or her duty . . . or amounts to a significant restraint of or interference with the parent's efforts to support or develop a relationship with the child.

*In re Audrey S.*, 182 S.W.3d at 864 (citations and footnotes omitted).

Mother relies on the fact that a child support payment of $6,361.00 was made on April 5, 2021, which was within the relevant four-month period. Additionally, she notes, that after this payment was made, Mother's total child support arrearage was only $498.00. However, she admits that she made no other payments of financial support during the relevant four-month period.

Petitioners counter arguing that Mother made no "voluntary" support payments during the relevant period, the only child support payment was the income tax intercept received on April 5, 2021, and that an involuntary income tax intercept is not considered

---

[4] Prior to 2018, the statute defined abandonment as a showing that the parent "willfully failed to support or . . . willfully failed to make reasonable payments toward the support of the child." Tenn. Code Ann. § 36-1-102(1)(A)(i) (effective July 1, 2016, to June 30, 2018); *see In re Preston H.*, No. M2022-00786-COA-R3-PT, 2023 WL 6793215, at *12 (Tenn. Ct. App. Oct. 13, 2023).

as a child support payment for purposes of determining abandonment. The trial court agreed, finding:

> The Mother's only payment of support for the child during the period of four months immediately preceding the filing of the petition for termination of the Mother's parental rights was by tax refund intercept on April 5, 2021 in the amount of $6361. However, a payment of child support via an intercept by the Internal Revenue Service does not constitute a voluntary payment of child support by the Mother during the statutory four-month period. *See In re Bryce F.*, No. E2014-01380-COA-R3-PT, 2014 WL 7403826, at *13 (Tenn. Ct. App. Dec. 30, 2014); *In re Kadean T.*, No. M2013-02684-COA-R3-PT, 2014 WL 5511984, at *6 (Tenn. Ct. App. Oct. 31, 2014); and *In re Ima D.*, No. M2021-00022-COA-R3-PT, 2021 WL 5441832, at *5 (Tenn. Ct. App. Nov. 22, 2021). This payment is the only factual matter of defense raised in the Mother's proposed findings of fact and conclusions of law to the claim that the Mother had "abandoned" the child by her failure to pay support for the four continuous months prior to the filing of the petition.

(Citations to the record omitted.)

As the trial court correctly noted, we considered the import of a tax intercept in several cases, including in *In re Kadean T.*, No. M2013-02684-COA-R3-PT, 2014 WL 5511984 (Tenn. Ct. App. Oct. 31, 2014), *In re Lavanie L.*, No. E2008-02622-COA-R3-PT, 2009 WL 3231091 (Tenn. Ct. App. Oct. 8, 2009), and *In re Alyssa Y.*, No. E2012-02274-COA-R3-PT, 2013 WL 3103592, at *10 (Tenn. Ct. App. June 17, 2013). As is the case here, with the exception of a tax intercept, the parent in *Kadean T.* provided no support during the four-month period.

> But for the $838 tax intercept which was received during the relevant period, it is uncontroverted that Mother provided no support during the four-month period. The trial court found that the tax intercept did not qualify as a support payment by Mother; because it was not a voluntary payment of child support. Mother contends this was error, however, she cites no authority that supports her position and we have identified authority that supports the trial court's ruling.
>
> In *In re Lavanie L.*, No. E2008-02622-COA-R3-PT, 2009 WL 3231091 (Tenn. Ct. App. Oct. 8, 2009), the mother made a similar argument; she contended that Tenn. Code Ann. § 36-1-113(g)(1) does not require that child support payments *be made* willfully or voluntarily. *Id.* at *6 (emphasis added). It was her contention all that mattered was that support was received during the relevant period, and "as long as a payment is made, it does not

matter how that payment was made, nor does it matter whether it was made willingly." *Id.* We found the assertion without merit, stating:

> As far as this court is concerned, she did willfully fail to make her child support payments. As a result, the State had to resort to other measures and intercept her income tax return to recoup those payments. Furthermore, her failure to pay child support is particularly disturbing because she had a tax refund for the State to intercept, showing that she had earnings from which she could have paid support. Due to her willful failure to make appropriate child support payments for a period of four months preceding the filing of the Petition for Termination, we affirm the trial court's ruling that Mother was in violation of Tenn. Code Ann. § 36 -1-113(g)(1).

*Id.*

The above rationale was followed in *In re Alyssa Y.*, No. E2012-02274-COA-R3-PT, 2013 WL 3103592, at *10 (Tenn. Ct. App. June 17, 2013), in which we stated:

> The fact that Mother's tax refund was intercepted and applied to her child support obligation is not relevant. *In re Lavanie L.*, No. E2008-02622-COA-R3-PT, 2009 WL 3231091, at *6 (Tenn. Ct. App. Oct. 8, 2009). As this Court noted in *Lavanie*, the interception of a tax refund does not constitute a voluntary payment of child support. *Id.*

*Id.; see also In re Adoption of Alexander M.S.F.*, 2013 WL 4677886, at *5 (holding a tax intercept is "irrelevant to the issue of willful failure to support" and does not constitute a voluntary payment of support).

Based on the foregoing authority, the trial court correctly concluded that the tax intercept would not be considered in determining whether Mother failed to support her child during the relevant period.

*In re Kadean T.*, 2014 WL 5511984, at *6–7.

We acknowledge Mother's argument that an income tax intercept is akin to a child support wage assignment for which a parent is credited as providing support; however, she provides no authority to support her contention on this point. As Petitioners note in their argument, "a wage assignment is an administrative method of streamlining collection of current child support obligations. An income tax intercept is a collection of a past due debt

following a judgment of arrears against the obligor." Thus, we find Mother's contention on this issue unpersuasive.

Mother also contends that she did not willfully fail to pay support because she lacked the income to provide any support. While she claimed to be unable to work due to physical and mental health issues, both she and her husband testified that she worked for her husband's lawn care business in 2020 and 2021 for which she was compensated. Further, there would have been no funds to intercept had she not earned taxable income. More importantly, Mother failed to establish that she was unable to work during the relevant four-month period and her testimony concerning her inability to work is not only inconsistent, but it is contradicted by her own testimony and that of her husband. This is significant because, as noted earlier, an absence of willfulness is now an affirmative defense that must be established by the parent. *See* Tenn. Code Ann. § 36-1-102(1)(I); *see also In re Preston H.*, 2023 WL 6793215, at \*12. Specifically, the statute provides:

> (I) For purposes of this subdivision (1), it shall be a defense to abandonment for failure to visit or failure to support that a parent or guardian's failure to visit or support was not willful. **The parent or guardian shall bear the burden of proof that the failure to visit or support was not willful. Such defense must be established by a preponderance of evidence**. The absence of willfulness is an affirmative defense pursuant to Rule 8.03 of the Tennessee Rules of Civil Procedure.

Tenn. Code Ann. § 36-1-102(1)(I) (2020) (emphasis added). And Mother failed to prove by a preponderance of evidence that her failure to support Macee was not willful.

For the foregoing reasons, we affirm the trial court's ruling that Petitioners proved the ground of abandonment by failing to pay support during the relevant four-month period.

## II.    FAILURE TO MANIFEST AN ABILITY AND WILLINGNESS TO ASSUME CUSTODY

Petitioners contend that the trial court erred by failing to find that Mother failed to manifest an ability and willingness to assume legal and physical custody or financial responsibility of Macee pursuant to Tennessee Code Annotated § 36-1-113(g)(14). We disagree.

The statute defines this ground as when

> A parent or guardian has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[.]

Tenn. Code Ann. § 36-1-113(g)(14).

This ground requires that the petitioner prove two elements by clear and convincing evidence. First, the petitioner must prove that the parent failed to manifest "an ability and willingness to personally assume legal and physical custody or financial responsibility of the child." Tenn. Code Ann. § 36-1-113(g)(14). Second, the petitioner must prove that placing the child in the parent's "legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child." Tenn. Code Ann. § 36-1-113(g)(14). Both elements must be satisfied for this ground to be established. *In re Neveah M.*, 614 S.W.3d 659, 674 (Tenn. 2020).

As for the first element, our Supreme Court has explained that the petitioner must prove by clear and convincing evidence that the parent "has failed to manifest either ability or willingness." *In re Neveah M.*, 614 S.W.3d at 677. If either is proven, then the first element is satisfied. *Id.*

With regard to the second element, the court has not identified a set list of circumstances that would constitute substantial harm because of the varied forms of conduct in which substantial harm can arise. However, this court has stated that "substantial harm" would indicate two things. "First, it connotes a real hazard or danger that is not minor, trivial, or insignificant. Second, it indicates that the harm must be more than a theoretical possibility." *In re Amynn K.*, No. E2017-01866-COA-R3-PT, 2018 WL 3058280, at *11 (Tenn. Ct. App. June 20, 2018) (quoting *Ray v. Ray*, 83 S.W.3d 726, 732 (Tenn. Ct. App. 2001)).

In its analysis of this issue, the trial court found:

The evidence is clear and convincing, as discussed above, that the Mother has not demonstrated a willingness to personally assume financial responsibility for the child. However, this Court otherwise disagrees with the Co-Petitioners that the evidence is clear and convincing that the Mother has failed to show an ability and willingness to personally assume legal and physical custody of the child.

The trial court's analysis of this issue continued with the finding that Mother

has not been permitted to have coparenting time with the child since December 19, 2019. Also, as of the Juvenile Court Magistrate's findings and recommendations of February 12, 2020, the Mother has not been permitted to have any real-time contact with the child, with her contact being limited to "written communications by letter or email to said child but no photographs."

Based on our review of the trial court's additional analysis, it is readily apparent that the trial court was troubled by the fact that the magistrate in juvenile court allowed Mother's access to and communications with Macee to be controlled and blocked by the therapist who had been hired by Petitioners.[5] The trial court was also troubled by the fact that Mother's access was also controlled by Macee, who was a mere child at the time. As the trial court noted in its final order:

> As discussed above, on April 28, 2021, the Juvenile Court Magistrate provided that the **"[t]he mother's coparenting time is at the discretion of the child and the child's therapist" and that there would be "[n]o further reviews."** As stated by the Co-Petitioners in their proposed findings and conclusions, the Mother's "path to reestablish her relationship with [the child] has been to work with Dr. Juliet Thomas, [the child's] therapist." [See Petitioners' Proposed Findings of Fact and Conclusions of law, filed December 15, 2022, p.6]. However, the therapist was retained by the Co-Petitioners and compensated by them. **The child is in the custody and control of the Co-Petitioners and is, to say the obvious, a child**. Moreover, although no copy of the petition was filed as an exhibit, the Mother testified that she had a petition pending in the Hamilton County Juvenile Court for visitation and contact with the child when the Co-Petitioners commenced this parental termination action. That petition demonstrates the Mother's persistence in attempting to regain a relationship with her child.

The evidence in the record does not preponderate against these findings. Furthermore, considering the above facts, as well as others in the record, we agree with the trial court's conclusion that the evidence fails to clearly and convincingly establish this ground. Accordingly, we affirm the trial court's determination that Petitioners have not proven this ground.

### III. BEST INTEREST FACTORS

Because we have, however, determined that the ground of abandonment by failure to provide support has been established upon which to terminate Mother's parental rights, our focus shifts to whether it is in Macee's best interest that Mother's rights be terminated.[6] *In re Audrey S.*, 182 S.W.3d at 877.

---

[5] Additionally, in its discussion of the best interest factors, the trial court noted in pertinent part: "While **the Court is concerned with the role and authority given to the therapist in the dependency and neglect proceedings**, this Court found the therapist to be a competent and credible witness. *See generally Whitaker v. Whitaker*, 957 S.W.2d 834, 838–39 (Tenn. Ct. App. 1997) (**discussing unlawful delegation of judicial authority to non-judge**)." (Emphasis added).

[6] Mother did not challenge the trial court's finding that it was in Macee's best interest that Mother's

"When a parent has been found to be unfit by establishment of at least one statutory ground for termination of parental rights, as here, the interests of parent and child diverge, and the focus shifts to what is in the child's best interest." *In re Jude M.*, 619 S.W.3d 224, 244 (Tenn. Ct. App. 2020). As such, the courts must review each factor "from the child's, rather than the parent's perspective." *In re Gabriella D.*, 531 S.W.3d 662, 681 (Tenn. 2017).

Tennessee Code Annotated § 36-1-113(i) provides a non-exhaustive list of factors for courts to consider in determining whether termination is in a child's best interest.[7] "These statutory factors are illustrative, not exclusive, and any party to the termination proceedings is free to offer proof of any other factor relevant to the best interest analysis." *In re Gabriella D.*, 531 S.W.3d at 681–82.

The trial court conducted a thorough analysis of the relevant factors, which we discuss below.

Regarding statutory factor (A), the trial court concluded that termination of Mother's parental rights was necessary for Macee's stability and continuity of placement. Specifically, the court found that:

> The child does not trust the Mother and is conscious of the Mother's not being normal. The child wants to be adopted by Shannon [L.], her stepmother and the co-petitioner in this matter. Attempts to continue interaction between the Mother and the child have been problematic. According to the child's therapist, the denial of this petition would be traumatic to the child. Conversely, the Mother produced Christmas cards from the child expressive of the child's love for her Mother. However, the child has subsequently started a new life and is thriving without interference or distraction from her Mother. The child's therapist testified that the child's emotional health improved with the restricting and elimination of contact with her Mother.

Having reviewed the record, we have determined that the evidence preponderates in favor of these findings.

---

parental rights be terminated. Nevertheless, this court has an affirmative duty to consider whether termination of her parental rights is in Macee's best interest. *See In re Carrington H.*, 483 S.W.3d at 525. Accordingly, we shall conduct the requisite analysis of the best interest factors.

[7] The statute was amended in 2021, prior to the commencement of this action, and the trial court correctly identified and considered the factors set forth in the amended version of Tennessee Code Annotated § 36-1-113(i) (2021).

As to statutory factor (B), the court found that "changing the child's current environment and the denial of this petition, as stated above, would be traumatic for the child." The evidence preponderates in favor of this finding.

As to statutory factor (C), whether Mother had met the child's needs, the court made the following findings:

> [T]he Mother financially abandoned the child during the period of four (4) continuous months immediately preceding the filing of the petition to terminate her parental rights. The child-support records indicate that the Mother has never made any direct payments of support when not subject to a wage assignment. The Mother did not pay support for the child as ordered by the Juvenile Court. The Mother did not pay her share of the child's medical expenses. Also, aside from the child's material needs, according to the testimony of the child's therapist, the Mother failed to conform or correct her behavior so that she could have a stable relationship with the child.

Having reviewed the record, we have determined that the evidence preponderates in favor of these findings.

As to statutory factor (D), the court found, based on the therapist's testimony, that Macee "currently has no attachment to her Mother and that a mother-child relationship between the child and the Mother is not foreseeable." The evidence preponderates in favor of this finding.

As to statutory factor (E), regarding Mother's regular visitation to cultivate a positive relationship, the trial court found:

> [T]he child's therapist testified that the Mother did not use contact with the child in a positive way. The Juvenile Court progressively restricted or eliminated the Mother's parenting time and communication with the child to no parenting time except at the discretion of the therapist and the child and to no communication except such as might be initiated by the child. Even when the Mother had face-to-face parenting time and telephone communication available to her, she did not take full advantage of the contact. Likewise, the Mother did not take full advantage of written communication with the child.

Having reviewed the record, we have determined that the evidence preponderates in favor of these findings.

As to statutory factor (F), "[w]hether the child is fearful of living in the parent's home," Tenn. Code Ann. § 36-1-113(i)(1)(F), the court found:

[T]he child witnessed violence between the Mother and her husband in their home. The therapist opined that the presence of the Mother's husband would cause traumatic stress to the child because of the physical violence and arguments that the child witnessed between the Mother and her husband. The child had reported to the therapist that the child had witnessed her Mother's husband hitting her.

The evidence preponderates in favor of these findings.

As to statutory factor (G), the court found that "the Mother's husband would trigger or exacerbate the child's experience of trauma or posttraumatic symptoms. Also, as stated above, the child witnessed her Mother's husband hitting her." The evidence supports these findings.

As to statutory factor (H), the court found that Macee "is attached not only to her Father but to her stepmother and her step siblings. She stated to the therapist that she wants her stepmother to be her mother. She calls her stepmother 'mom.'" The evidence supports these findings.

The trial court found that statutory factor (I) was not significant for this case, and we agree. It also found that there was "scant evidence" relevant to statutory factor (J), other than that "Mother continues to struggle with mental health issues." Again, we agree.

As to statutory factor (K), the court made the following findings:

[T]here is little or no evidence as to the Mother's taking advantage of available programs, services, or community resources to assist in making a lasting adjustment of circumstances, conduct, or conditions. The Mother did, however, testify that she has taken parenting classes and that she is compliant with her mental health treatment and medications and that she and her husband attend marriage counseling. There was no corroborating evidence, however, that the Mother has her mental health issues under control.

Having reviewed the record, we have determined that the evidence preponderates in favor of these findings.

The court found that statutory factor (L) was not applicable to this case, and we agree.

As to statutory factor (M), the court found: "Mother has not demonstrated a sense of urgency in seeking custody of the child or addressing the circumstances, conduct, or

conditions that began with the Hamilton County Circuit Court in limiting her coparenting time to supervised visitation." The evidence preponderates in favor of these findings.

As to statutory factor (N), the court noted that the juvenile court ruled that Macee was dependent and neglected while in Mother's custody. The court further found:

> The evidence establishes that the Mother's husband engaged in physical abuse toward the Mother and that the child witnessed the abuse. The Co-Petitioners testified that the Mother's home was untidy and unsanitary. While the Mother disputed that testimony, this Court finds the Co-Petitioners' testimony to be more credible. The Father also testified that the child had extensive dental problems and was lacking in dental care. However, the Father and the Mother enjoyed equal coparenting time and no explanation was provided as to why the Father had not obtained dental care for the child earlier.

Having reviewed the record, we have determined that the evidence preponderates in favor of these findings.

As to statutory factor (O), the trial court found that the evidence was insufficient to determine whether Mother ever provided safe and stable care for Macee. We agree.

As to statutory factor (Q),[8] the court found that Mother has not demonstrated that she has the ability and commitment to create and maintain a suitable home that meets Macee's needs. To the contrary, the court found "Mother does not understand the child's basic and specific needs necessary for the child to thrive." The evidence preponderates in favor of this finding.

As to statutory factor (R), regarding the health and safety of Mother's home environment, the court found that the evidence was insufficient to make a finding, and we agree.

As to statutory factor (S), the court found, "Mother has not consistently provided more than token financial support for the child." The evidence preponderates in favor of this finding.

As to statutory factor (T), the trial court made the following finding:

---

[8] Statutory factor (P) concerns whether the parent has demonstrated "an understanding of the basic and specific needs required for the child to thrive." Tenn. Code Ann. § 36-1-113(i)(P). The trial court made no written finding concerning factor (P). Nevertheless, other findings made by the trial court relate to this subject, which findings are noted elsewhere.

Mother testified that she has been diagnosed with bipolar disorder and that she currently takes medication for depression. In prior court hearings, the Mother testified that she had been misdiagnosed with bipolar disorder but had been diagnosed with attention deficient/hyperactivity disorder, bulimia nervosa, and depression. The Mother testified that she could not remember the name of her current counselor. The Mother has a history of not complying with medical directives such as driving an automobile when she was not medically cleared to do so due to seizures resulting in a major single car crash in January 2020. Again, as set forth above, the Mother does not understand the child's basic and specific needs for the child to thrive.

Having reviewed the record, we have determined that the evidence preponderates in favor of these findings.

In summation of its best interest analysis, the trial court found as follows:

None of the above statutory factors exist to disfavor termination of the Mother's parental rights or to indicate that termination of her parental rights is not in the child's best interest. On the other hand, the "combined weight" of the Court's factual findings above "amounts to clear and convincing evidence that termination is in the child's best interest." *In re Riley B*., [No. E2022-00684-COA-R3-PT,] 2023 WL 3477216 at *9 [(Tenn. Ct. App. May 16, 2023)].

Thus, based on the combined effect of these and other findings of fact, the trial court concluded that Petitioners had proven by clear and convincing evidence that it was in the best interest of Macee for Mother's parental rights to be terminated.

"Facts considered in the best interests analysis must be proven by 'a preponderance of the evidence, not by clear and convincing evidence.'" *In re Gabriella D.*, 531 S.W.3d at 681 (citations omitted). Having reviewed the record and the trial court's findings, we have determined that the evidence preponderates in favor of the trial court's best interest findings.

Having made this determination, we must now consider the combined weight of these facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interests. *Id.*; *see also In re Kaliyah S.*, 455 S.W.3d 533, 555–56 (Tenn. 2015). Having done so, we find, as the trial court did, that the combined weight of these facts proved by clear and convincing evidence that termination of Mother's parental rights is in the best interest of Macee.

Accordingly, we affirm the trial court's determination that termination of Mother's parental rights is in Macee's best interest.

Having affirmed the trial court's determination that grounds have been proven and that termination of Mother's parental rights is in the best interests of the child, we affirm the termination of Mother's parental rights.

## IN CONCLUSION

Accordingly, we affirm the trial court's determination that a ground for termination of Mother's parental rights was proven and that termination of Mother's parental rights is in the best interest of Macee. Accordingly, we also affirm the termination of Mother's parental rights. Costs of appeal are assessed against the appellant, Elisa M. W.

_____
FRANK G. CLEMENT JR., P.J., M.S.